**DEPARTMENT OF CORRECTIONS, Petitioner,**

v.

**Joseph A. ROCHE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 5, 1994.
Decided Jan. 4, 1995.

---

Robin M. Lewis, Asst. Counsel, for petitioner.

Joseph A. Ciccitto, for respondent.

Before SMITH and KELLEY, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

The Department of Corrections (Department) petitions for review of the March 2, 1994 adjudication and order of the State Civil Service Commission (Commission) which sustained the appeal of Joseph A. Roche (Roche) and overruled the action of the Department in removing Roche from his position as Corrections Officer 3 at State Correctional Institute (SCI) at Graterford. The Commission concluded that the Department did not meet its burden of proving just cause for Roche's removal pursuant to Section 807 of the Civil Service Act (Act).[1] We disagree and conclude that the Department did prove just cause and that the Commission committed an error of law in concluding otherwise. Therefore, we reverse the Adjudication and Order of the Commission and reinstate the Department's decision to remove Roche from his position as Corrections Officer 3.

### Facts

Presently, there is little or no dispute about the facts. Roche's removal stemmed from events which began on November 6, 1989. As found by the Commission, on that date, nineteen inmates were transferred by bus from SCI Camp Hill to SCI Graterford due to prisoner rioting at SCI Camp Hill. (R.R. at 204a.) The inmates arrived at SCI Graterford at approximately 6:00 p.m. (R.R. at 54a.) Roche, then a Sergeant, was assigned to work at the new Restricted Housing Unit (RHU). (R.R. at 53a.)

At approximately 5:50 p.m. on November 6, 1989, after completing his assigned duties for the day at the *new* RHU, Roche drove

---

1. Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. § 741.807.

Officer Collins to the *old* RHU to assist in unloading the inmates. (R.R. at 53a.) Roche observed approximately thirty-five officers in riot gear at the back of the bus and along the walkway leading into the old RHU. (R.R. at 57a.) Roche remained in the area behind the bus for approximately forty-five minutes to an hour. (R.R. at 85a.) He did not participate in unloading the prisoners. (R.R. at 58a.)

Sixteen of the transferred inmates received injuries during their transfer from the bus to the old RHU at SCI Graterford. (R.R. at 175a.) The Department conducted an internal investigation regarding the November 6, 1989 incident. (R.R. at 66a.) On January 23, 1990, Roche was interviewed by Major Stephen Lucash and Captain Phillips about what he observed at the old RHU. (R.R. at 46a.) Major Lucash asked Roche if he observed "any staff assault, kick, beat, hit, punch, or use force of any kind against an inmate." (R.R. at 47a.) Roche responded that he did not observe any such conduct. (R.R. at 47a.) At the conclusion of the internal investigation, it was determined that injuries had been sustained by the transferred inmates and that Roche's statement that he did not observe any of the inmates being assaulted by the staff was inconsistent with the investigation's findings in this regard. (R.R. at 163a.) Therefore, Roche was ordered to undergo a counseling session, a corrective action. (R.R. at 116a.) Roche was subsequently promoted from Sergeant to Lieutenant in June, 1990. (R.R. at 50a.)

In July, 1991, Roche was subpoenaed to testify before the Grand Jury for the United States District Court for the Eastern District of Pennsylvania regarding the November 6, 1989 incident at SCI Graterford. (R.R. at 72a.) In his testimony before the grand jury, Roche stated that he did not observe any staff assault any of the inmates. (R.R. at 39a.) On October 30, 1991, Roche was indicted by the grand jury for making false declarations in response to questions regarding his observations of the treatment of the inmates. (R.R. at 38a.)

Roche then admitted that during the time he was at the old RHU on November 6, 1989,

he saw probably twelve or thirteen inmates being removed somewhat forcibly from the back of the bus, with two officers on each side. (R.R. at 82a.) He also observed some of the inmates being struck with batons and several inmates who may have been kicked. In any event, several inmates fell to the ground. (Commission Finding No. 19 and R.R. at 83a.) Roche stated that from where he was standing he was unable to identify any of the officers who assaulted the inmates. (R.R. at 85a.) Roche claimed he did not reveal his observations to Major Lucash during the Department's internal investigation because: "[I]t would have been extremely difficult to continue working at Graterford at that point." (R.R. at 71–72a and Commission adjudication at 9.)

The grand jury indictments of the SCI Graterford guards were widely publicized in the press. Articles appeared in *The Times Herald* and *The Mercury*,[2] reporting that thirteen current and former prison guards at SCI Graterford had been indicted for either participating in the beatings and/or the subsequent cover-up. The articles mentioned that two guards were indicted for lying to the grand jury. (R.R. at 351–63a.)

Major Lucash testified before the Commission that he was questioned by friends and neighbors about the conduct of the guards on November 6, 1989. (R.R. at 110a.) He testified they said things like "wow" and "your officers really did a number on those inmates. Do you guys permit the Officers to beat on inmates?" (R.R. at 111a.)

By letter dated October 31, 1991, the Department notified Roche that he was being suspended without pay for a period not to exceed thirty days, effective October 31, 1991, pending completion of a review of the October 30, 1991 grand jury indictment on charges of perjury. (R.R. at 2–3a.) The letter stated that the information presented in the indictment disclosed possible violations of the Department's Code of Ethics, Section B, # 24 and # 30. (R.R. at 2–3a.)

By letter dated December 13, 1991, the Department notified Roche that he was being

---

2. Respectively, these newspapers originate in Norristown and Pottstown, Pa.

removed from his position as a Corrections Officer 3, effective December 14, 1991, due to his violation of the Code of Ethics, Section B, # 24 and # 30. (R.R. at 6–7a.) The letter stated that those violations were based on his actions during the November 6, 1989 incident at the old RHU at SCI Graterford, particularly his actions before the grand jury as described in the indictment. (R.R. at 6–7a.)

■ Based on the evidence presented, the Commission concluded that the Department established that Roche had violated Section B, # 30 of the Code of Ethics by failing to respond truthfully and completely to the questions posed to him during the internal investigation. (Department's Brief, Exhibit "A" at 9.) However, the Commission concluded that, though Roche should receive disciplinary action, his violation of Section B, # 30 did not warrant his removal. (Department's Brief, Exhibit "A" at 9.) Further, the Commission concluded that although Roche's indictment brought some discredit to the Department, it did not believe it was sufficient to warrant Roche's removal. (Department's Brief, Exhibit "A" at 11.) The Commission concluded that the Department failed to present evidence establishing just cause for removal under Section 807 of the Act. (Department's Brief, Exhibit "A" at 12.) Therefore, the Commission modified the penalty imposed on Roche by the Department pursuant to Section 952(c) of the Act and ordered him reinstated without back pay.[3] (Department's Brief, Exhibit "A" at 12.) The Department appealed the Adjudication and Order of the Commission to this Court. We reverse.[4]

### Discussion

■ The Department argues that the Commission committed an error of law when it concluded that the Department failed to establish just cause for Roche's removal. Section 807 of the Act provides that civil service employees may only be removed upon a showing of just cause by the Department.[5] Just cause must be related to the employee's job performance and touch in some rational and logical manner upon the employee's competency and ability. *Corder v. State Civil Service Commission,* 2 Pa.Commonwealth Ct. 462, 465, 279 A.2d 368, 371 (1971); *Doerr v. Pennsylvania Liquor Control Board,* 88 Pa.Commonwealth Ct. 610, 491 A.2d 299 (1985). Whether the actions of a civil service employee constitute just cause for removal is a question of law and is reviewable by this Court. *Western Center, Department of Public Welfare v. Hoon,* 143 Pa.Commonwealth Ct. 212, 598 A.2d 1042 (1991).

■ The Department removed Roche from his position as Corrections Officer 3 based on his violation of the Department's Code of Ethics, Section B, # 24 and # 30. Those sections, in pertinent part, are as follows:

24. During off-duty hours, employes will conduct themselves in such a manner so as to demonstrate the public's trust and confidence inherent in their position as a public servant. Any conduct which brings discredit to their profession, responsibilities, the Department of Corrections, or public service at large shall be subject to immediate discipline.

. . . .

30. All employes shall comply and cooperate with internal investigations conducted under the authority of the Department of

---

3. Section 952(c) of the Act provides:

In the case of any employe removed, furloughed, suspended, or demoted, the Commission may modify or set aside the action of the appointing authority. Where appropriate, the commission may order reinstatement, with the payment of so much of the salary or wages lost, including employe benefits, as the commission may in its discretion award.

71 P.S. § 741.952(c).

4. Both parties agree that our scope of review is limited to determining whether a constitutional right has been violated, an error of law has been made, or whether the findings of fact made by the Commission are supported by substantial evidence. 2 Pa.C.S. § 702; *Wanamaker v. Pennsylvania Liquor Control Board,* 148 Pa.Commonwealth Ct. 541, 611 A.2d 1368 (1992).

5. No regular employe in the classified service shall be removed except for just cause.
71 P.S. § 741.807.

Corrections, and respond to questions completely and truthfully....

(R.R. at 234-35a.)

The Department presented evidence, including Roche's own testimony, that he did not cooperate with its internal investigation of the November 6, 1989 incident and, in fact, that he lied to his superiors when questioned about what he observed on that date. Roche testified before the Commission as follows:

Q. During the interview you were asked by Mr. Lucash, were you not, 'While you were present, did you, at any time, see any staff assault, kick, beat, hit, punch, or use force, or [sic] any kind against an inmate?'

Your response at that time was, 'No, I did not.'

Isn't that correct?

A. That is correct.

(R.R. at 47a.)

Major Lucash, the Major of the Guard at SCI Graterford, testified that he believed Roche was untruthful in his responses to the questions asked of him during the internal investigation. (R.R. at 126a.) The investigation revealed that inmates were injured within Roche's view from about fifteen feet away and during the forty-five minutes to an hour time period Roche said he remained in a location that was not his own assigned work area. Roche, however, claimed he did not observe any staff assault inmates during that time.

The Department further presented evidence, including Roche's own admission, that he perjured himself before a United States District Court grand jury when questioned about the incident on November 6, 1989. Roche testified before the Commission as follows:

Q. It is correct that you did make false declarations before the Grand Jury when you stated that you saw nothing unusual, other than one inmate on the ground? Is that not correct?

A. That is correct.

(R.R. at 39a.)

Q. Mr. Roche, you did, in fact, on November 18, 1992, admit in open court in front of the Honorable District Judge Herbert J.

Hutton, that you in fact did perjure yourself and that you did lie, correct, when asked whether or not you saw inmates being assaulted, beaten and kicked at the old RHU on November 6, 1989, at Graterford? Is that not correct?

A. I am not sure of the date. I don't have that in front of me. But your statement is correct, if it is the date.

(R.R. at 44a.)

It is undisputed that Roche lied during the internal investigation and perjured himself before the grand jury. It is further undisputed that his actions were reported by the press and, combined with the actions of other corrections officers, brought discredit upon the Department and his profession. The only question before us for review is whether the Department proved just cause for Roche's removal based on these actions. The Commission concluded that, though the Department proved Roche violated the Code of Ethics, his violations did not warrant his removal. Relying upon Section 952(c) of the Act, it modified the penalty imposed by the Department. We believe it was an error of law to do so.

Initially, we note that Section 952(c) vests some discretion in the commission in that it "may modify or set aside the action of the appointing authority," and that "[w]here appropriate, the commission may order reinstatement, with the payment of so much of the salary or wages lost ... as the commission may in its discretion award." *See Galant v. Department of Environmental Resources* 534 Pa. 17, 626 A.2d 496 (1993) (holding that Section 952(c), which was added to the Civil Service Act in 1989 as a procedural change, applied retroactively and empowered the Commission, rather than the appointing authority, to make the final determination of just cause). In *Galant*, the Supreme Court concluded, following its own thorough review of the record, that the Commission's decision to impose a lesser penalty was supported by the evidence. *Id.* at 22 n. 4, 626 A.2d at 499 n. 4.

However, we believe that the alleged grounds for employee discipline in *Galant* are far different than those found here. Galant was a sanitarian supervisor employed in

the Department of Environmental Resources. There, the appointing authority removed him for comparatively minor derelictions, being absent without approved leave, using Commonwealth telephones for personal calls and selling life insurance during work hours.

Here, there is no legal excuse for Roche's failure to report the assaults on prison inmates. As a Sergeant and Corrections Officer, he had a duty to prevent such injustice. At the very least, he was required to report the abuses and to do so promptly and truthfully. (R.R. at 96a.) He did neither. Further, he participated in an attempt to cover-up the criminal actions of fellow corrections officers by lying about what he observed that evening, not only to the officers who conducted the internal investigation, but to the United States District Court grand jury.

■ Roche's actions constitute a dereliction of duty in a matter of critical public concern and reflect upon his ability to perform his duties as a Corrections Officer. "The appearance of wrongdoing by an employee in a sensitive position reflects unsatisfactorily on the employee's ability to perform his duties and supports his dismissal for just cause." *Stone v. State Correctional Institution at Graterford,* 55 Pa.Commonwealth Ct. 188, 189, 422 A.2d 1227, 1228 (1980). Further, his actions contributed to the discredit brought upon the Department by the events of November 6, 1989. *See Ettinger v. State Civil Service Commission,* 114 Pa.Commonwealth Ct. 594, 539 A.2d 67 (1988) (prison officer is highly sensitive position which requires those who hold it to avoid appearance of impropriety); *Department of Justice, Bureau of Corrections v. Grant,* 22 Pa.Commonwealth Ct. 582, 350 A.2d 878 (1976).

We must conclude that the Commission abused its discretion and erred as a matter of law in overruling the Department's removal of Roche from his position as Corrections Officer 3. To hold otherwise here would emasculate the ability of the Department to rid itself of employees unable to perform their duties within the ethical standards set forth in the Code of Ethics handbook.

For the reasons set forth above, we reverse the adjudication and order of the Commission which reinstated Officer Roche to his position as Corrections Officer 3 and order his immediate removal from that position.

## ORDER

**AND NOW,** this 4th day of January, 1995, the order of the State Civil Service Commission dated March 2, 1994 is hereby reversed.